## Pompa Estate

*William R. Cooper,* for accountant.
*Thomas F. Delaney,* of *Haws & Burke,* for exceptants.

TAXIS, *J.,* November 18, 1977 —

. . .

The second objection challenges the ruling in the adjudication that claims against the estate, costs of administration and death taxes should be apportioned over the entire estate and not paid exclusively from the residue. In such cases, there are two possible sources of the rule to be applied. The first, and most important, is any expression of intent by testator which bears upon the problem. If there is no such expression, then it is necessary to look to existing statutory and case law to see what is to be done.

Decedent died on December 4, 1973, survived by her husband, Alberico Pompa (from whom she had been separated for a considerable period of time) and an adopted son, Don Benton. Her will was handwritten and dated September 8, 1973. It specifically bequeaths a tract of land of approximately 33 acres to Alberico Pompa. Essentially, the balance of the estate is given to Don Benton. While Alberico Pompa has agreed to pay a pro rata share of real estate taxes on the land devised to him, he objects to contributing to the payment of any of the debts of the estate, death taxes, claims and debts, and the costs of administration. In our adjudication, we concluded ". . . that the intent expressed in this provision of the will, above quoted, is that her (decedent's) entire estate is to share these charges equally, and the Court so rules."

The provision referred to was Item 10 of the will, which, this court believes, relieves the residue of the total burden of the various items in question. It reads, "All and any of my just debts, funeral expenses, estate and inheritance and succession taxes, the cost of administration of my estate shall be paid out of my estate."

The items mentioned in Item 10 would in some way be paid from the estate. The key to the meaning of this provision is that there is no mention in it of a "residuary" estate. Had testatrix desired the interest of the residuary beneficiary to bear in their entirety the costs of administration, death taxes and general claims and other such items, she could easily have said so. It seems quite clear to the court that she intended these items to be apportioned over her entire estate, and not paid from any single portion thereof.

Item 10 can be given significance only if it is regarded in this fashion. The estate contains the 33 acres of land specifically given to Alberico Pompa, and the will further provides that Samuel Benton Pompa shall receive $1, Leonard Pompa shall receive a Cadillac car, and the rest, residue and remainder of the estate, including a house and five acres of land, shall go to Don Benton, aforementioned. Each therefore shall bear a pro rata share of the costs of administration, claims or debts which have or will be paid, and such death taxes as shall ultimately be due.

We are mindful that section 718(a) of the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, as amended, 72 P.S. §2485-718, would govern the specific devise of the land to Alberico Pompa, and would provide for the payment of the inheritance tax on this land by the residuary estate, if that section were applicable. We do not believe that it is applicable, because of the reference which we have made to Item 10 of decedent's will. Section 718(a), by its own terms, applies only "[i]n the absence of a contrary intent appearing in the will, . . ." Item 10 is a sufficient expression of a contrary intent to spread the costs of administration, claims and death taxes over all of the assets of the estate.

As directed in the adjudication, counsel for accountant shall file a schedule of distribution in duplicate, on which shall be set forth the correct apportionment of the taxes, claims and costs which are to be paid from this estate.